IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. WILLIAM P. GRESS and<br>NORTH SHORE PHYSICAL<br>WELLNESS, LTD.,<br>on behalf of Plaintiffs and<br>the class members defined herein,<br><br>Plaintiffs,<br><br>v.<br><br>CHIRONOW INC.,<br>and JOHN DOES 1-10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   1:24-cv-12488<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1. Plaintiffs Dr. William Gress and North Shore Physical Wellness, Ltd., bring this action to secure redress for the actions of Defendants ChiroNow Inc. and John Does 1-10 in sending or causing the sending of unsolicited advertisements (Exhibits A-E) to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

**PARTIES**

3. Plaintiff Dr. William P. Gress maintains a standalone telephone facsimile machine at

1

855 Maple Avenue, Homewood, Illinois 60430, that automatically prints incoming faxes onto paper using toner / ink.

4. Plaintiff North Shore Physical Wellness, Ltd., is an Illinois corporation with its principal place of business in Northbrook, Illinois, where it maintains a telephone facsimile machine that automatically prints incoming faxes onto paper using toner / ink.

5. Defendant ChiroNow Inc. is a Delaware corporation with offices at 3050 Post Oak Blvd., Suite 510, Houston, TX 77056. Its registered office and agent is LegalInc. Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, DE 19713

6. ChiroNow Inc. sells marketing services to chiropractors.

7. John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

9. Personal jurisdiction exists under 735 ILCS 5/2-209, in that Defendants:

   a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

10. Venue in this District is proper for the same reason.

11. Article III is satisfied by the receipt of "junk faxes." *Craftwood II, Inc. v. Generac Power Sys.*, 920 F.3d 479, 481 (7th Cir. 2019); *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019).

2

**FACTS**

12. In August and September 2024, Dr. William Gress received the unsolicited fax advertisements attached as Exhibits A-B on his standalone facsimile machine.

13. In August and September, 2024, North Shore Physical Wellness, Ltd. received the unsolicited fax advertisements attached as Exhibits C-D on its standalone facsimile machine.

14. In November, 2024, North Shore Physical Wellness, Ltd. received the unsolicited fax advertisement attached as Exhibit E on its standalone facsimile machine.

15. The faxes promote the services of ChiroNow, Inc., refer the recipients to its website address, www.chiro-now.com, and invite participation in a business arrangement whereby the recipient provides healthcare services and receives free marketing services from ChiroNow, Inc. "We typically get the dotor [sic] 1-10 new patients per month." (www.chiro-now.com website last visited December 3, 2024).

16. The faxes offer the recipient doctors an opportunity to "Make an Extra 50k per month using our ShockWave/Cell Wave Program. We provide the Equipment, Training, Territory and All the Patients." (Exhibits A, C, E) These junk faxes invite the recipients to "Please Call/Text Dr. Miles at (615) 535-2701."

17. The junk faxes inform the recipient of services and products Defendant offers and describe how a relationship with Defendant would be of mutual benefit.

18. An internet search for (615) 535-2701 identifies another website owned or used by Defendant, www.healthwaverx.net. This website features the same logo on the junk faxes Plaintiffs' received and the same contact phone number on Exhibits A, C and E. " (www.healthwaverx.net website last visited December 3, 2024)

19. Defendant's website, www.healthwaverx.net provides in part, "#1 Shockwave System in the World", and "Our team of Doctors are excited to be the only provider in the country to bring the only FDA cleared HealthWaveRx therapy to hundreds of Drs across the nation. This is a new tool used in many countries across the globe for promoting the natural healing without

3

surgery. We provide all the advertising, patient generation, equipment, territory, training, website, certification, protocols and access to the team of HealthWave Doctors."

20. To conduct its business, Defendant needs to enter into business relationships with several medical providers, and the attached faxes are open invitations to do business with Defendant offering a lucrative opportunity to make money ("Make an Extra 50k per month...").

21. The principal benefit to the fax recipient is obtaining new business. The fax recipients are offered an opportunity to obtain access to new patients and a team of HealthWave Doctors, as well as training, certification, equipment (property) and protocols to provide services. The fax recipient medical providers are also offered advertising and a website.

22. The faxes were authorized and approved by ChiroNow Inc.

23. Discovery may reveal the transmission of additional faxes as well.

24. Defendants are responsible for sending or causing the sending of the faxes.

25. Defendants derived economic benefit from the sending of the faxes.

26. Defendants either negligently or wilfully violated the rights of Plaintiffs and other recipients in sending the faxes.

27. Plaintiffs had no prior relationship with Defendants and had not authorized the sending of fax advertisements to Plaintiffs.

28. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

29. The faxes do not contain an "opt out" notice that complies with 47 U.S.C. §227.

30. On information and belief, Defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

31. There is no reasonable means for Plaintiffs or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

32. Plaintiffs incorporate ¶¶ 1-31.

33. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

34. The TCPA, 47 U.S.C. §227(b)(3), provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

35. Plaintiffs and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, Plaintiffs' statutory right of privacy was invaded.

36. Plaintiffs and each class member are entitled to statutory damages.

37. Defendants violated the TCPA even if their actions were only negligent.

38. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

39. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiffs bring this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendants, or any

5

of them, promoting their goods or services for sale (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

40. The class is so numerous that joinder of all members is impractical. Plaintiffs alleges on information and belief that there are more than 40 members of the class.

41. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which Defendants compiled or obtained their list of fax numbers;

    c. Whether Defendants thereby violated the TCPA;

42. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

43. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

44. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

45. Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* 08cv2014, 2009 WL 3334909, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th

Cir. 2016); *Sadowski v. Med1 Online, LLC,* 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *G.M. Sign, Inc. v. Group C Communications, Inc.,* 08cv4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* 4:12cv221, 2013 WL 275568, 2013 U.S. Dist. LEXIS 9554 (E.D.Mo. Feb. 24, 2013).

46. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the class and against Defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unsolicited fax advertising;

    d. Costs of suit;

    e. Such other or further relief as the Court deems just and proper.

## **COUNT II – ILLINOIS CONSUMER FRAUD ACT**

47. Plaintiffs incorporate ¶¶ 1-31.

48. Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815

ILCS 505/2, by sending unsolicited fax advertising to Plaintiffs and others.

49. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

50. Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

51. Plaintiffs and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

52. Defendants engaged in such conduct in the course of trade and commerce.

53. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

54. Defendants' shifting of advertising costs to Plaintiffs and the class members in this manner makes such practice unfair. In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

55. Defendants should be enjoined from committing similar violations in the future.

## **CLASS ALLEGATIONS**

56. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiffs bring this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them,

promoting their goods or services for sale (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

    57.    The class is so numerous that joinder of all members is impractical. Plaintiffs alleges on information and belief that there are more than 40 members of the class.

    58.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.    Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

    59.    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

    60.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

    61.    A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

    62.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the class and against Defendants for:

    a.    Actual damages;

    b.    An injunction against the further transmission of unsolicited fax advertising;

    c.    Attorney's fees, litigation expenses and costs of suit;

d.     Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

63.    Plaintiffs incorporate ¶¶ 1-31.

64.    By sending Plaintiffs and the class members unsolicited faxes, Defendants converted to their own use ink or toner and paper belonging to Plaintiffs and the class members.

65.    Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

66.    By sending the unsolicited faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

67.    Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

68.    Plaintiffs and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

69.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

70.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiffs bring this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their goods or services for sale (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

71.    The class is so numerous that joinder of all members is impractical. Plaintiffs alleges on information and belief that there are more than 40 members of the class.

72.    There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members. The predominant common questions include:

    a.    Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.    Whether Defendants thereby converted the property of Plaintiffs.

73. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

74. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

75. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

76. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the class and against Defendants for:

    a.    Actual damages;

    b.    An injunction against the further transmission of unsolicited fax advertising;

    c.    Costs of suit;

    d.    Such other or further relief as the Court deems just and proper.

### **COUNT IV – TRESPASS TO CHATTELS**

77. Plaintiffs incorporate ¶¶ 1-31.

78. Plaintiffs and the class members were entitled to possession of the equipment they used to receive faxes.

79. Defendants' sending Plaintiffs and the class members unsolicited faxes interfered

with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to Plaintiffs' trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

80. Defendants acted either intentionally or negligently in engaging in such conduct.

81. Plaintiffs and each class member suffered damages as a result of receipt of the unsolicited faxes.

82. Defendants should be enjoined from continuing trespasses.

## CLASS ALLEGATIONS

83. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiffs bring this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their goods or services for sale (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

84. The class is so numerous that joinder of all members is impractical. Plaintiffs alleges on information and belief that there are more than 40 members of the class.

85. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether Defendants thereby committed a trespass to chattels.

86. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

87. Plaintiffs' claims are typical of the claims of the class members. All are based on the

same factual and legal theories.

88. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

89. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the class and against Defendants for:

      a. Actual damages;

      b. An injunction against the further transmission of unsolicited fax advertising;

      c. Costs of suit;

      d. Such other or further relief as the Court deems just and proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 S. Clark Street, Suite 1800
Chicago, Illinois 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelman@edcombs.com
hkolbus@edcombs.com

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, transmission reports, lists and all other tangible things that relate to plaintiffs, the events described herein, any third party associated with sending or causing to send the junk faxes at issue and/or identifying the recipients or intended recipients of the junk faxes or fax campaign(s) at issue, and communications with the Plaintiffs and the putative class members. Defendants are further requested to preserve any and all documents that show any expressed prior consent or permission to send advertising faxes and any documents that show a prior business relationship between Defendants and the recipients of the advertising faxes. Defendants are further requested to preserve their websites and links to their websites, including but not limited to www.chiro-now.com and www.healthwaverx.net. Defendants shall also preserve the list of persons who have sent messages to (615) 535-2701 or otherwise contacted Dr. Miles concerning the faxes at issue.

These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman